

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2008

# Chelle v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5322

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Chelle v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1642.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1642

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5322
_____

AZEB FREZGHI CHELLE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(No.  A79-329-213)

Immigration Judge: Daniel Meisner

_____

Argued: January 7, 2008

_____

(Filed:   February 6, 2008)

Before: FUENTES, JORDAN, <u>Circuit Judges</u> and O'Neill, <u>District Judge</u>[1]


Genet Getachew, Esquire (**Argued**)
Suite 1902
26 Court Street
Brooklyn, NY 11242

---

[1]Honorable Thomas O'Neill, District Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

*Attorney for Petitioner*

Richard M. Evans, Esq. **(Argued)**
Kohsei Ugunori, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C.  20044

*Attorneys for Respondent*

OPINION

O'NEILL, *District Court Judge*.

Petitioner Azeb Frezghi Chelle, an Eritrean citizen, entered the United States on June 26, 2000, as a non-immigrant visitor.  On February 28, 2002 she was served with a Notice to Appear which charged her with being an alien who had remained in the United States without authorization in violation of 8 U.S.C. § 1227(a)(1)(B).  Chelle conceded removability and subsequently applied for asylum.  Her application was also treated as a request for withholding of removal and for protection under the Convention Against Torture.  After a hearing the Immigration Judge ("IJ") denied relief and the Board of Immigration Appeals ("BIA) adopted and affirmed the IJ's decision.  Chelle filed a timely petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252 and will deny the petition for the reasons that follow.

Chelle's application for asylum and other relief is based upon her allegations of past persecution and upon her asserted fear of further persecution by government

authorities and citizens of Eritrea due to her religion. Chelle claims to be a Jehovah's Witness. In the affidavit accompanying her application for asylum she stated the following facts. Chelle's faith was that of an Orthodox Christian until 1991. During that year she required hospitalization. Members of the Jehovah's Witness faith visited and prayed for her, daily. Chelle believed the prayers helped cure her and upon recovering from her various illnesses she converted and became a Jehovah's Witness.

In her affidavit Chelle claimed that after her conversion she was outcast by her family and community. She stated that because the Eritrean government considered Jehovah's Witnesses to be its enemies, Jehovah's Witnesses were unable to work, go to school, or attend religious services. Chelle claims that she lost her job because of her religion. Her affidavit states that because she was unable to find employment due to her religious affiliation she left Eritrea and traveled to Ethiopia in May 1995. The affidavit also states that she left Eritrea because of hostilities against Jehovah's Witnesses. Chelle claims that she was stoned by small children because of her religious beliefs.

In her affidavit Chelle states that while she was in Ethiopia she contracted with an employment agency to work as a maid in Saudi Arabia. She provided the employment agency with passport photographs. Chelle claims that shortly after she executed the employment contract the agency's personnel advised her that she would fly to Saudi Arabia. She stated that the employment agency provided her with her passport and that upon her receipt thereof she was surprised to see that her name had been changed to a

3

Muslim name, Hayat Awel. She asserts that she inquired about the name change, was told that the name change was not a problem, and flew to Saudi Arabia because she had no other option.

Chelle's affidavit also states that her Saudi Arabian employers initially believed that she was Muslim. She claims that she refused to convert to Islam and that her refusal caused some problems with her employers. Nevertheless, she remained in their employ for over five years. Chelle traveled to the United States with her employers in June 2000 and worked for them while they were in the United States for approximately one month. Upon their return to Saudi Arabia she remained in the United States working for their daughter. Chelle claims to have escaped from the daughter on a trip to New York City. Her affidavit states she subsequently discovered a community of Eritrean nationals and began living among them in New York City.

A hearing was held before the IJ on July 14, 2004 and an Tigrignian interpreter was provided for Petitioner. Some of her testimony contradicted statements made in her application for asylum and in the supporting affidavit. As the IJ also noted, Chelle testified inconsistently during the hearing. The IJ made adverse credibility determinations against Chelle and concluded that her true identity had not been established. The IJ also found that the evidence did not support Chelle's claims that she is a Jehovah's Witness and that she had suffered persecution in Eritrea. Finding that Chelle did not establish eligibility for relief, the IJ concluded that Chelle was removable from the United States

and denied her applications for asylum, withholding of removal, and for protection under the Convention Against Torture. Chelle appealed the IJ's decision and the BIA adopted and affirmed the IJ's opinion. The BIA held that, although Chelle offered plausible explanations for some of the inconsistencies in her testimony, the record does not support the conclusion that the IJ's adverse credibility determination was clearly erroneous.

Where the BIA adopts and affirms the opinion of the IJ we review the decision of the IJ and any additional reasoning by the BIA. See, Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002)(citing, Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001)); see, also, Miah v. Ashcroft, 346 F.3d 434, 439 (3d Cir. 2003). We review the IJ's findings, including adverse credibility determinations, under the substantial evidence standard. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). "If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003). The IJ's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

In order to be eligible for a grant of asylum, Chelle must establish that she is a "refugee," meaning a "person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of

5

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).  See, e.g. Miah, 346 F.3d at 438.  To demonstrate past or future persecution, Chelle must provide evidence of "past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control."  Kibinda v. Att'n Gen., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fiadjoe v. Att'y Gen., 411 F.3d 135, 160 (3d Cir.2005)).  A petitioner who offers "credible testimony regarding past persecution is presumed to have a well-founded fear of future persecution." Berishaj v. Ashcroft, 378 F.3d 314, 326 (3d Cir. 2004).

We find that substantial evidence supports the IJ's adverse credibility determination.  Chelle's true identity is questionable.  As the IJ noted, Chelle does not have a valid passport in her name and her birth record is not authenticated.  Moreover, the dates of birth on her passport differs from that on her birth record and on her application for asylum.  Chelle had an opportunity to correct the date of birth entered on her application and she did not.  In fact, she testified that the Asylum Officer reviewed her application with her to verify the accuracy of her responses.  Nevertheless, Chelle failed to correct what she presently asserts is an incorrect date of birth.   In addition, the IJ found it troubling that although Chelle claims to be a citizen of Eritrea she was somehow able to obtain an Ethiopian passport.  She claims to have obtained an Eritrean passport from the

6

Eritrean consul while in Saudia Arabia despite the fact that her Ethiopian passport had an incorrect name. Chelle's claims simply are not credible. Although she has offered a plausible explanation for the birth date discrepancy, the documentary and testimonial inconsistencies remain and neither Chelle's true identity nor her correct date of birth have been definitively established.

The IJ noted several other inconsistencies between Chelle's application for asylum and her testimony. The IJ observed that Chelle's application indicates that she was unemployed and supported by Jehovah's Witnesses from July of 1991 through July of 1995. However, during the hearing she testified that she worked in a sweater factory in Eritrea until the end of 1994 when she claims to have lost her position because of her religion. Chelle also provided inconsistent testimony regarding her claims that she is a Jehovah's Witness and was persecuted because of her religion. During the hearing Chelle testified that she attended prayer meetings two or three times per week. She subsequently testified that she may have attended a total of ten Jehovah's Witness meeting during the course of a four year period. When questioned by her counsel, Chelle attempted to rehabilitate her testimony and stated that during the same four year period she may have attended over 100 meetings.

The record does not compel a result contrary to the IJ's adverse credibility determination. Chelle failed to demonstrate that the IJ or BIA erred in rejecting her

application for asylum, withholding of removal, and relief under the Convention Against

Torture. For the reasons discussed above, we will deny the petition.